## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MICHIGAN NURSERY AND
LANDSCAPE ASSOCIATION, WELTON            Case No.
MAINTENANCE, LLC d/b/a WELTON
LAWN CARE, EXPERIGREEN –                 Hon.
DETROIT, LLC d/b/a EXPERIGREEN
LAWN CARE, RAY WIEGAND's
NURSERY, INC., AGS HOLDINGS, INC.
d/b/a LUSH LAWN, JENNIFER
TARRENCE, and BRUTON'S LAWN
CARE, LLC, individually and on behalf of all
others similarly situated,

    Plaintiffs,

vs.

GRETCHEN WHITMER, in her official        **VERIFIED COMPLAINT FOR**
capacity as Governor, and DANA NESSEL,   **DECLARATORY AND INJUNCTIVE**
in her official capacity as Attorney General.   **RELIEF AND DEMAND FOR JURY**
                                         **TRIAL**

    Defendants.

_____/

Plaintiffs Michigan Nursery and Landscape Association, Welton Maintenance, LLC d/b/a

Welton Lawn Care, ExperiGreen – Detroit, LLC d/b/a ExperiGreen Lawn Care, Ray Wiegand's

Nursery, Inc., AGS Holdings, Inc. d/b/a Lush Lawn, Jennifer Tarrence, and Bruton's Lawn Care,

LLC, individually and on behalf of all others similarly situated, bring this lawsuit to vindicate their

rights under the United States and Michigan Constitutions to provide lawn and landscaping

services and to sell plants and other garden supplies at retail notwithstanding Defendant Governor

Whitmer's Executive Order 2020-42 (COVID-19).  Plaintiffs bring their Complaint for declaratory

and emergency injunctive relief against Defendant Gretchen Whitmer, in her official capacity as

Governor, and Dana Nessel, in her official capacity as Attorney General, and allege as follows:

## INTRODUCTION

1.      Amid a global health pandemic and economic uncertainty, Governor Whitmer has issued a series of executive orders that, in the name of protecting public health, require cessation of private business for numerous corporations and partnerships deemed "nonessential." While Plaintiffs do not disagree with the need to protect public health, the Governor's most recent action, Executive Order 2020-42 (COVID-19), does not accomplish that goal as applied to Plaintiffs.

2.      The purpose of the Governor's cessation-of-business order is to prevent person-to-person contact and spread of COVID-19. But the likelihood of such contact and spread does not depend on whether a business activity is "essential" or "nonessential." It depends on the type of business activity conducted. When it comes to lawn care and landscaping, for example, services can be conducted with zero or virtually zero contact between service providers and customers or among service providers. The same is true of retail garden centers that provide for curbside pickup. That is why, on information and belief, *Michigan is the only state in the country currently prohibiting such services*. Nat'l Assoc of Landscape Prof's, *State by State COVID-19 Guidance*, https://www.landscapeprofessionals.org/Coronavirus/State_by_State_COVID_Guidance.aspx (accessed April 15, 2020).

3.      The Governor tacitly acknowledges this reality. Executive Order 2020-42 allows government employees to participate in activities that are indistinguishable from those in which Plaintiffs engage, including "the maintenance of safe and sanitary public parks so as to allow for outdoor activity." Homeowners are also allowed to perform these tasks on their private property. So while a county worker can mow grass and trim foliage in a public park, and an individual home owner can engage in those same activities in their back yard, Plaintiffs cannot provide those services for compensation in a customer's back yard, even if that customer is elderly or infirm and cannot perform those activities for themselves. And while a Michigan citizen can order shrubbery

2

and other foliage from innumerable online garden centers and have their purchases delivered to their home, retail garden centers are strictly prohibited from online or other sales and a contact-less curbside pickup.

4.     Plaintiffs and those like them have tried repeatedly to bring their concerns to the attention of Governor Whitmer and her staff but to no avail. Michigan remains the only state in the country prohibiting commercial landscaping and lawn-care services.

5.     Given that Plaintiffs' business activities involve isolated work that is identical to activities that government employees, private homeowners, and even online businesses are already allowed to perform, there is nominal if any public-health benefit from Executive Order 2020-42 as applied to lawn care, landscaping, and retail garden centers that take appropriate precautions, like Plaintiffs. Conversely, Executive Order 2020-42's economic impact on these businesses and interstate commerce is devasting. The Order has caused the loss of thousands of jobs, and it is likely to result in the permanent shuttering of hundreds of businesses.  As of the filing of this Complaint, the United States unemployment rate is over 13%, retail sales have fallen at a historic pace, and gross domestic product is shrinking at a pace not seen since the Great Depression. Over 800,000 unemployment claims have been filed in Michigan alone in the last 30 days.

6.     Accordingly, Executive Order 2020-42, as applied to Plaintiffs, violates the dormant Commerce Clause of the United States Constitution. The Order also violates Plaintiffs' due-process rights and constitutes a regulatory taking under the United States and Michigan Constitutions.

7.     Plaintiffs request an emergency preliminary injunction that allows them to immediately resume providing lawn care, landscaping, and retail-garden-sales services. They also request class certification, a permanent injunction that protects the class, and class damages and attorney fees.

3

## PARTIES

8.      Plaintiff Michigan Nursery and Landscape Association ("MNLA"), established in 1922 and with an office in Okemos, Michigan, is the largest and oldest statewide Green Industry trade association. MNLA represents a wide range of Michigan Green Industry businesses on legislative and regulatory issues, education and events, certification programs, marketing and promotion, and member-only money saving programs. Its members, members' employees, and those like them form the backbone of an industry that keeps Michigan beautiful and environmentally healthy.   MNLA members specialize in lawn care, landscape design and installation, landscape maintenance, tree care, irrigation and water management, and the retail sale of plants and seeds. MNLA participates as a Plaintiff on behalf of itself and all of its members.

9.      Plaintiff Welton Maintenance, LLC d/b/a Welton Lawn Care ("Welton Lawn Care"), is a Michigan limited liability company based in Highland, Michigan.  Welton Lawn Care's members are Chris-Ann Paterson Welton and Mark Welton, citizens of Michigan.  Before Governor Whitmer issued the Executive Orders that are the subject of this case, Welton Lawn Care provided lawn care and pest control services to residential and commercial customers in Oakland, Livingston, Washtenaw, Genesee, and Wayne counties.   Services Welton Lawn Care offered included lawn fertilization, weed control, aeration, overseeding, tree and shrub care, mole control, mosquito control, and perimeter insect control.   Even before Governor Whitmer issued the Executive Orders that are the subject of this case, Welton Lawn Care provided those services with minimal person-to-person contact.

10.      Welton Lawn Care is able to provide its services with virtually no person-to-person contact and respecting social distancing.  Welton Lawn Care previously has, and can continue to, stagger its employees' schedules so that employees do not come into contact with one another,

4

communicate with its customers by telephone or electronically, and implement other policies and procedures that will prevent person-to-person contact.

11.     Since Governor Whitmer issued the Executive Orders that are the subject of this case, Welton Lawn Care has been prevented from providing its customers the majority of services it offers.  As the proximate result of the prohibitions included in the Executive Orders that are the subject of this case, Welton Lawn Care has been forced to lay off 10 of its 12 employees, lost approximately 100 customers, and lost approximately $140,000 in customer payments and wasted inventory.  If the Court does not enjoin enforcement of the Executive Orders that are the subject of this case, Welton Lawn Care will be irreparably harmed.

12.     Plaintiff ExperiGreen – Detroit, LLC d/b/a ExperiGreen Lawn Care ("ExperiGreen") is an Indiana limited liability company that, prior to Governor Whitmer issuing the Executive Orders that are the subject of this case, provided lawn care and pest control services out of Livonia, Michigan, to customers in Wayne, Oakland, Washtenaw, and Macomb counties. Services ExperiGreen offered included lawn fertilization, weed control, mosquito control, flea and tick control, and tree and shrub care.  Even before Governor Whitmer issued the Executive Orders that are the subject of this case, ExperiGreen provided those services with minimal person-to-person contact.

13.     ExperiGreen is able to provide its services with virtually no person-to-person contact and respecting social distancing.  ExperiGreen previously has, and can continue to, stagger its employees' schedules so that employees do not come into contact with one another, communicate with its customers by telephone or electronically, and implement other policies and procedures that will prevent person-to-person contact.

14.     Since Governor Whitmer issued the Executive Orders that are the subject of this case, ExperiGreen has been prevented from providing its customers any services.  As the

proximate result of the prohibitions included in the Executive Orders that are the subject of this case, ExperiGreen has been forced to lay off 12 employees, upon information and belief lost customers, missed approximately $110,000 in produced revenue/sales, and will possibly lose inventory and customer pre-payments. If the Court does not enjoin enforcement of the Executive Orders that are the subject of this case, ExperiGreen will be irreparably harmed.

15.     Plaintiff Ray Wiegand's Nursery, Inc. ("Wiegand's Nursery") is a Michigan corporation operating a 20-acre consumer retail location, a wholesale location for commercial clients, and a 700-acre growing facility/farm located in Macomb County, Michigan. Wiegand's Nursery, which traces its founding to the 1860s and was formed as a business entity in 1941, specializes in the sale of flowering plants and shrubs, vegetables, and trees, and annually employs over 240 individuals. Wiegand's Nursery operates at every level of the supply chain, growing annual and perennial plants, shrubs, and trees for sale to retail customers, wholesale to commercial landscapers in Michigan and neighboring states, and farm direct sales to other commercial retailers in Michigan and Illinois. Wiegand's Nursery also purchases plant material from other Midwest growers, which are sold to its customers at its retail location.

16.     Despite investing significant resources to assure the safety of its guests and employees during the COVID-19 outbreak, including but not limited to redesigning its retail location, implementing new purchasing procedures for wholesale purchasers, and requiring employees on its farm to perform their work individually, Governor Whitmer's Order prohibits Wiegand's Nursery from operating through its peak season. In 2019, more than $10 million of Wiegand's Nursery's sales occurred between April and June.

17.     To ensure retail customers can adequately maintain CDC guidelines while shopping in its outdoor retail facility, Wiegand's Nursery undertook—at great expense—to redesign its shopping experience, adding more cash registers to its retail facility; implementing one-way aisles,

entrances, and exits at its locations; installing plexiglass shields at its payment terminals; equipping its employees with face masks and rubber gloves; posting signs throughout the facility to ensure customers are frequently reminded of the social distancing guidelines; and sanitizing its equipment and workspaces frequently. Wiegand's Nursery also implemented online ordering procedures, so it can provide to its customers contactless pick-up and delivery.

18.     Governor Whitmer's Order also crippled Wiegand's Nursery's wholesale operations. Though its wholesale orders can be conducted with virtually no personal interaction and respecting social distancing guidelines, the Order prohibits Wiegand's Nursery's sales to its commercial landscaping clients and shipment of orders from its wholesale yard to buyers in Michigan and outside the state. Though Weigand's Nursery is still able to operate farm direct sales from its growing facility under the agricultural exemption, the plant material for sale at its wholesale yard is not available for purchase.  Furthermore, while a customer in Michigan can order plant material from an Indiana seller and have it shipped to their home, Plaintiff Weigand's Nursery cannot ship any of its merchandise to customers in Michigan or elsewhere under Governor Whitmer's Orders. Further, the Order's prohibition on all such commercial landscaping activity paralyzed Wiegand's Nursery's commercial customers, and its wholesale business has been incapacitated by Governor's Whitmer's Order.  As of the time of filing, more than $200,000 worth of merchandise that has not been paid for is ready for pick-up on the loading docks of Wiegand's Nursery's wholesale yard.

19.     The Order has also criminalized and sensationalized Wiegand's Nursery's critical operations and created bad will in the community based on its attempt to preserve merchandise and create a retail experience that complies with CDC guidelines. Twice neighbors have called law enforcement to investigate whether Wiegand's Nursery is violating Governor Whitmer's

Order. These calls hurt Wiegand's Nursery's reputation and have created bad will in the community.

20.     Plaintiff AGS Holdings, Inc. d/b/a Lush Lawn ("Lush Lawn") is a Michigan corporation with its principal place of business in Oakland County, Michigan. Lush Lawn employs approximately 90 employees across its five branches and provides service to more than 16,000 households each year.  Annually, Lush Lawn generates more than $7.5 million in revenue. Services Lush Lawn offered included lawn fertilization, weed control, mosquito control, flea and tick control, and tree and shrub care.  Even before Governor Whitmer issued the Executive Orders that are the subject of this case, Lush Lawn technicians provided those services with virtually no person-to-person contact.

21.     Lush Lawn is able to provide its services with virtually no person-to-person contact and respecting social distancing guidance provided by the Center for Disease Control.  Lush Lawn previously has, and can continue to, stagger its employees' schedules so that employees do not come into contact with one another, implement new loading procedures to eliminate any contact between employees, check employees' temperatures using infrared thermometers and require employees to report any COVID-19 symptoms, communicate with its customers by telephone or electronically, disinfect trucks and equipment prior to use by its employees, and implement other policies and procedures that will prevent person-to-person contact. Despite the extensive measures undertaken by Lush Lawn to protects its employees and customers, law enforcement has threatened to cite Lush Lawn for operating while maintaining social distancing guidelines. On two separate occasions, law enforcement entered Lush Lawn branches and advised Lush Lawn's employees that, though they were providing services allowed under Lush Lawn's interpretation of Governor Whitmer's first Executive Order, that if operation continued at the location they would receive a citation.

22.     Since Governor Whitmer issued the Executive Orders that are the subject of this case, Lush Lawn has been prevented from providing its customers any services.  Lush Lawn is contemplating whether certain services could be provided, but those services would account for only a small percentage of Lush Lawn's normal revenues. As the proximate result of the prohibitions included in the Executive Orders that are the subject of this case, Lush Lawn has been forced to lay off all but 20 of its employees, upon information and belief lost customers, stands to lose more than $200,000 each week the Governor's Order prohibits it from operating, and will possibly lose inventory and customer pre-payments.  If the Court does not enjoin enforcement of the Executive Orders that are the subject of this case, Lush Lawn will be irreparably harmed.

23.     Jennifer Tarrence ("Tarrence") is the furloughed branch manager of the Lush Lawn location in Grand Blanc, Michigan.  Plaintiff Tarrence resides in Genesee County, Michigan, and worked for Lush Lawn for more than seven years. Plaintiff Tarrence was the company's first woman branch manager. Before Governor Whitmer's Order took effect, Plaintiff Tarrence was responsible for managing the day-to-day operations of the Grand Blanc location, coordinating the technician's routes, and ensuring the work orders and invoices were processed in a timely manner. Plaintiff Tarrence and her husband, who worked at General Motors for the 20 years preceding the pandemic, supported their children, who are 13 and 15 years old, respectively, with the income derived from their employment.  Since the cancellation of schools in Michigan, both children are attending online school from their homes.  Plaintiff Tarrence has had difficulty finding affordable household necessities and has spent more money on groceries and food for her family than before the COVID-19 crisis began. Once General Motors ceased operations at its production facilities, Plaintiff Tarrence's husband was furloughed, and he filed for unemployment.

24.     Before Governor Whitmer's Order took effect, Lush Lawn and Plaintiff Tarrence took steps to mitigate the risks of virus transmission between Lush Lawn technicians and

customers. For example, Plaintiff Tarrence completed her job duties from home, implemented new safety procedures for the Lush Lawn technicians, required Lush Lawn technicians to cease any in-person interaction with customers, and staggered technicians' start times to allow appropriate social distancing and continue operations with virtually no person-to-person contact. Because she has a higher risk of contracting COVID-19, Plaintiff Tarrence coordinated these extensive efforts and the operations of the Grand Blanc branch from her home until Governor Whitmer's Order forced the branch to close. Because the Lush Lawn technicians, which she coordinates, were unable to serve their customers, Plaintiff Tarrence's position was suspended on April 13, 2020.

25.     Plaintiff Bruton's Lawn Care, LLC ("Bruton's Lawn Care") is a Michigan limited liability company based in Montrose, Michigan.  Bruton's Lawn Care's member is Charlie Bruton, a citizen of Michigan.  Before Governor Whitmer issued the Executive Orders that are the subject of this case, Bruton's Lawn Care provided landscaping and restoration services, lawn care, and grounds maintenance for its customers in Genesee County.  Bruton's Lawn Care annually employs twelve to fifteen employees, including Mr. Charlie Bruton's wife. Services Bruton's Lawn Care offered included, mowing and edging, landscaping and planting, hydraseeding, grounds restoration for industrial projects, and grounds maintenance for apartment complexes. Even before Governor Whitmer's Executive Order, Bruton's Lawn Care provided these services with minimal contact between Bruton's Lawn Care employees and customers.

26.     Bruton's Lawn Care is able to provide its services with virtually no person-to-person contact and respecting social distancing.  Plaintiff Bruton's Lawn Care's employees do not interact with its customers, and it previously prohibited its employees from sharing equipment, required employees to work out of the same truck all day, and required all equipment to be sanitized multiple times each day.  If allowed to return to operation, Bruton's Lawn Care is prepared to offer services with virtually no person-to-person contact between its employees.

27.    Since Governor Whitmer issued the Executive Orders that are the subject of this case, Plaintiff Bruton's Lawn Care has been prevented from providing its customers any of the services it offers.  As the proximate result of the prohibitions included in the Executive Orders that are the subject of this case, Bruton's Lawn Care has been forced to lay off its employees, lost customers, and stands to lose approximately $14,000 per week in customer payments for grounds maintenance, landscaping, and related plant material purchases as well as an additional $20,000 in wasted hydraseed inventory  The Michigan State Police have informed Bruton's Lawn Care that noncompliance with the Governor's Order would result in confiscation of equipment and issuance of citations.  If the Court does not enjoin enforcement of the Executive Orders that are the subject of this case, Burton Lawn Care, LLC will be irreparably harmed.

28.    Defendant Gretchen Whitmer is the Michigan Governor and is being sued in her official capacity. Defendant Whitmer is, and at all relevant times was, an employee of the State of Michigan vested by the Michigan Constitution with the executive power of the State, including the power to supervise each of the principal departments of the executive branch of the State government. As Governor, Ms. Whitmer is the State official who issued Executive Order 2020-42 (COVID-19).

29.    Defendant Dana Nessel is the Attorney General of the State of Michigan and is sued in her official capacity. Defendant Nessel is, and at all relevant times was, an employee of the State of Michigan with authority to enforce Michigan law.

## JURISDICTION AND VENUE

30.    Plaintiffs bring this lawsuit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, and allege violations of the Fifth and Fourteenth Amendments to, and the Commerce Clause of, the United States Constitution.

31.     Plaintiffs seek declaratory and injunctive relief against the enforcement of Executive Order 2020-42 (COVID-19) against Plaintiffs and similarly situated parties. Plaintiffs also seek damages for their lost business activities and the lost value of their businesses.

32.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343, which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights under the United States Constitution.

33.     This Court has personal jurisdiction over Defendants because both are officials of, and reside in, the State of Michigan.

34.     Venue in this District is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Specifically, Governor Whitmer issued Executive Order 2020-42 from her office located in Lansing, Michigan, in Ingham County, which is within the District.

## FACTS

**The Executive Orders**

35.     On March 10, 2020, Governor Whitmer declared a state of emergency throughout the State of Michigan by issuing Executive Order 2020-4. The emergency relates to the spread of COVID-19, a public-health emergency as recognized by the World Health Organization and the United States Center for Disease Control and Prevention.

36.     Since then, Governor Whitmer has issued several dozen additional executive orders related to COVID-19. The orders that resulted in this litigation are 2020-21 and 2020-42.

37.     Governor Whitmer's Executive Order 2020-21, attached as **Exhibit 1**, took effect on March 24, 2020. The Order restricted travel within the State and ordered all businesses, with limited exceptions, to cease operations. Governor Whitmer rescinded and replaced the Order on April 9, 2020.

38. Governor Whitmer's Executive Order 2020-42, attached as **Exhibit 2**, took effect on April 9, 2020. The Order extended the timeline in Order 2020-21 and greatly expanded the Michigan government's restriction on the ability of businesses to operate.

39. Executive Order 2020-42 notes that the Governor considers the Order's prohibitions to be "necessary to protect life and property or to bring the emergency situation within the affected area under control" under MCL 10.31(1). In other words, the Order's adverse impact on private businesses is for a public purpose.

40. Under Paragraph 4 of Executive Order 2020-42, "No person or entity shall operate a business or conduct operations that require workers to leave their homes or places of residence except to the extent that those workers are necessary to sustain or protect life or to conduct minimum basic operations."

41. The Order does not include landscaping or lawn care services or retail-garden sales within its exceptions for essential services. To remove any doubt, the Governor released a series of FAQs related to the Order that included the following:

**EO 2020-42: May landscaping, lawncare, tree service, irrigation, and related outdoor maintenance companies operate under this order?**

*In nearly all cases, no.* A business cannot designate workers to perform these services unless the service is necessary to maintain the safety, sanitation, and essential operations of a residence. This is a narrow exception that only permits in-person work that is strictly necessary to address a circumstance that immediately and genuinely impairs the habitability of a home during the emergency; the exception will be satisfied, at most, rarely. Routine concerns, such as about longer grass increasing insects, pests, or allergies, do not qualify. Nor can workers leave the home to perform these services at business facilities: the exception applies only to residences. Any necessary in-person work that is permitted under the order must be done in accordance with the mitigation measures required under section 10 of the order. The order does not prohibit homeowners from tending to their own yards as they see fit. [https://www.michigan.gov/coronavirus/0,9753,7-406-98810-525363--,00.html (emphasis added).]

42.     Even while prohibiting the commercial services that Plaintiffs provide, Executive Order 2020-42 tacitly concedes that such services do not create a public-health risk by authorizing those same activities to be performed by government employees.

43.     In Paragraph 6(b) of the Order, the Governor allows "[a]ll in-person government activities at whatever level (state, county, or local)" that involve "the maintenance of safe and sanitary public parks so as to allow for outdoor activity."

44.     This means that a county employee may mow grass, apply pesticides, cut back obstructive trees and shrubbery, and the like.

45.     As the above-quoted FAQ makes clear, homeowners can engage in these same activities if tending to their own yards.

46.     Such authorized activities make perfect sense. Unlike in-person purchasing of alcohol, tobacco, or lottery tickets, all of which will require some person-to-person interaction at a store—such as checking a customer's age on a government-issued ID—mowing the lawn, trimming foliage, and planting shrubbery can easily take place (and typically do) with no person-to-person contact whatsoever.

47.     Similarly, because Executive Order 2020-42 does not prohibit online purchases, a private homeowner could purchase plants and other landscaping materials online, have those products to delivered to their home, and install the plants and other materials without issue. But the Order prohibits the same homeowner from engaging in the exact same activity if it involves purchasing plants and landscaping materials at a local brick-and-mortar retail garden center, even if the center has arranged for curbside pickup.

48.     What's more, the same homeowner can arrange for curbside pickup of groceries, fast food, alcohol, tobacco, and many other items. But a retail garden center is prohibited from selling via curbside pickup seeds or flowers.

14

49. Any business that violates Executive Order 2020-42 is subject to severe fines and penalties, even those that could operate with appropriate social distancing and other measures to mitigate the spread of COVID-19, including appropriate work conditions and precautions when obtaining fuel at a gas station. Further, the office of Attorney General Nessel has communicated its intent to enforce the Order.

**The impact on Plaintiffs**

50. Because of its threat of fines and criminal penalties, Executive Order 2020-42 shuts down lawn care, landscaping, and retail-garden businesses altogether. Plaintiff companies and similarly situated businesses have lost the ability to use their real and personal property in any economically beneficial manner. Plaintiff employees have lost their ability to work at their jobs and receive their regular pay and health benefits.

51. Spring and early summer are particularly damaging times for these businesses to be closed. Unlike other businesses that provide goods and services year round, landscapers, lawn-care companies, and retail garden centers have a defined work season that begins in earnest approximately March 15th of each year and ends in late October.

52. Plaintiffs, collectively and as representatives of their respective classes, are losing hundreds of millions of dollars in inventory and business opportunities as a result of the Governor's actions. They are also experiencing harm to their reputations and their relationships with employees, vendors, and customers

53. The State of Michigan has not offered Plaintiffs or similarly situated businesses appropriate compensation for this total seizure of their businesses.

54. The Governor's executive orders prevent Plaintiffs from using their real and personal property for other purposes, either. The orders' effect is to appropriate Plaintiffs' property for the orders' duration.

55.   There are additional constitutional problems with Executive Order 2020-42.

56.   The Order is not neutral because some private businesses enjoy exemption from the Order and other businesses with the same characteristics do not.

57.   The Order does not apply equally to all private businesses.

58.   The Order does not differentiate between those private businesses containing a heightened risk of viral transfer—such as restaurants, bars, and other in-person services—and those private businesses which are not likely to perpetuate viral spread.

59.   In fact, the Order allows many of these high-spread businesses to stay open if the business adopts measures—such as those already used by Plaintiffs—to limit customer contacts. So while it continues to be permissible for Michigan citizens to walk into a grocery or convenience store to buy lottery tickets or alcohol, retail garden centers are prohibited from engaging in any sales whatsoever, even for curbside pickup, involving no person-to-person interaction.

60.   Executive Order 2020-42 is not generally applicable because Defendants have waived its application to many businesses.

61.   The Order is not generally applicable because it does not apply equally to all businesses that can accomplish their purpose without in-person interactions with customers.

62.   The Order is not generally applicable because Defendants exempted certain private businesses from its application arbitrarily.

63.   The Order is neither neutral or generally applicable because Defendants have exempted certain private businesses that can accomplish their purpose without in-person contact, but not Plaintiffs.

64.   This indiscriminate ban on the operation of all private businesses is not rationally related to stopping the spread of COVID-19.

65.     The Order deprives Plaintiffs' of their liberty without due process of law.   The Order also infringes on Plaintiffs' freedom of movement and fundamental right to travel.

**Impact on the public**

66.     Some members of the public are physically incapable of performing the landscaping and lawn-care services that Plaintiffs provide. They hire Plaintiffs and similarly situated companies and employees to provide these services for them.

67.     Because Executive Order 2020-42 prevents Plaintiffs from performing services, these members of the public are left with few options.

68.     Notwithstanding all this, local governments are starting to issue citations for property owners who cannot keep up with their yard work:



**Request for an Injunction**

69.     Plaintiffs do not impugn Governor Whitmer's motivation in promulgating her executive orders to stop the spread of COVID-19. But they do contest those orders' constitutionality as applied to Plaintiffs and those similarly situated to them, and they contest the State's authority to appropriate Plaintiffs' real and personal business property without just compensation.

70.     Preliminarily enjoining enforcement of Executive Order 2020-42 as applied to Plaintiffs will not harm the State or its citizens.

71.     In addition, an injunction will further the public interest by ensuring that commerce is not impaired by the prohibition on landscaping, lawn-care, and retail-garden services.

72.     As set forth fully in Plaintiffs' Emergency Motion for Preliminary Injunction and accompanying Memorandum in support, Plaintiffs are likely to succeed on their claims that the Governor's Order violates the Commerce Clause of the U.S. Constitution (U.S. Const. Art. I, Sec. 8, cl. 3); the Takings Clause of the Fifth Amendment to the U.S. Constitution; the Fourth Amendment to the U.S. Constitution; the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution; and 42 U.S.C. § 1983.

**Class action allegations**

73.      Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and on behalf of the following Classes:

74.     Class 1: All landscaping companies that perform services in the State of Michigan and who have taken appropriate safeguards to ensure social distancing in the contracting for and performance of landscaping services.

75.     Class 2: All lawn-care companies that perform services in the State of Michigan and who have taken appropriate safeguards to ensure social distancing in the contracting for and performance of landscaping services.

76.     Class 3: All retail garden centers that sell product in the State of Michigan and who have taken appropriate safeguards to ensure social distancing in the sale and delivery of retail garden products.

77.     Class 4: All Michigan businesses that have been unable to put to valuable use all their real and personal property as a result of Executive Orders 2020-21 and 2020-42.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

78.     The members of the four proposed Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Plaintiffs believe that there are hundreds of members of Classes 1-3 and many thousands of members of Class 4, the precise number being unknown to Plaintiffs, but such number being ascertainable from Defendants' records regarding entities licensed to do business in the State of Michigan. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Commonality and Predominance: Fed. R. Civ. P. 23(a)(2)**

79.     This action involves common questions of law and fact that predominate over any questions affecting individual Class members, including, without limitation:

a.     Whether Defendants have unlawfully prevented members of Classes 1-3 from providing services and sales to customers and soliciting new business; and

b.     Whether Defendants have unlawfully prevented members of Class 4 from putting to valuable use all their real and personal property without appropriate compensation.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

80.     Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were similarly situated and comparably injured through Defendants' wrongful conduct as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

81.     Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of other members of the Classes they seek to represent. Plaintiffs have retained counsel competent and experienced in complex litigation. And Plaintiffs intend to prosecute the action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

82.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy. What's more, no unusual difficulties are likely to be encountered in the management of these class actions. The damages or other financial detriment suffered by Plaintiffs and other Class members, while significant, are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Classes to individually seek redress for Defendants' wrongful conduct.

83.     Even if Class members could afford individual litigation, the Court system likely could not. Individualized litigation creates a potential for inconsistency or contradictory judgments, and it increases the delay and expense to all parties and the court system. By contrast, the class-action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

## CAUSES OF ACTION

**COUNT I – Violation of the Commerce Clause, U.S. Const. Art. I, Sec. 8, cl. 3,
and 42 U.S.C. § 1983 (Classes 1-3 only)**

84.     Plaintiffs incorporate herein by reference the allegations in all preceding paragraphs of this Complaint.

85.     The Commerce Clause of the United States Constitution reserves the power to regulate interstate and foreign commerce to Congress.

86.     Because these powers are reserved to Congress, individual states may not unduly burden interstate commerce.

87.     Governor Whitmer's Executive Order 2020-42 imposes a burden on interstate commerce and on Plaintiffs that is clearly excessive in relation to the putative local benefits. Plaintiffs' goods and services move in the flow of interstate commerce. And Plaintiffs' businesses impact the flow of interstate commerce.

88.     Where Plaintiffs are willing and able to provide landscaping, lawn-care, and retail-garden services with virtually no person-to-person contact and respecting social distancing, there is nominal or no public benefit to preventing Plaintiffs from providing these services. Conversely, Executive Order 2020-42 incapacitates these businesses, causing job loss, loss of business revenue, and inevitably bankruptcy and permanent closure of valuable Michigan businesses.

89.     Executive Order 2020-42 does not properly balance these interests. Michigan is believed to be the only state in the country that prohibits landscaping and lawn-care businesses from operating. And Executive Order 2020-42 allows government activities, including "the maintenance of safe and sanitary public parks to as to allow for outdoor activity," and further allows homeowners to engage in activities that the Order prohibits Plaintiffs from performing.

90.     Accordingly, Executive Order 2020-42 is an unconstitutional regulation of commerce and/or an undue burden on that commerce in violation of the Commerce Clause of the United States Constitution.

### COUNT II – Violation of the 14th Amendment's Due Process Clause and 42 U.S.C. § 1983 (Classes 1-3 only)

91.     Plaintiffs incorporate herein by reference the allegations in all preceding paragraphs of this Complaint.

92.     The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."

93.     Plaintiffs have a right to travel and provide their businesses services, and to do so without being treated unequally by the government.

94.     Executive Order 2020-42 is neither neutral nor generally applicable. It contains substantial exemptions. And the Order, as applied to Plaintiffs, is not rationally related to the State's goal of preventing the spread of COVID-18.

95.     Plaintiffs have no adequate remedy at law for this continuing violation of their constitutional rights.

96.     Plaintiffs are therefore entitled to declaratory and injunctive relief as well as attorney fees and all other appropriate relief to vindicate the violation of their Fourteenth Amendment right not to be subject to punishment by a vague statute.

### COUNT III – Violation of the Takings Clauses of the U.S. & Michigan Constitutions and 42 U.S.C. § 1983 (Classes 1-4)

97.     Plaintiffs incorporate herein by reference the allegations in all preceding paragraphs of this Complaint

98.    Governor Whitmer has seized without appropriate compensation the real and personal property of businesses across the State by forcing closure of those businesses deemed "non-essential."

99.    These uncompensated seizures violate the Takings Clause of the Fifth Amendment, made applicable to States through the Fourteenth Amendment, and Article X, Section 2 of Michigan's 1963 Constitution.

100.    The Governor's Executive Orders taking Plaintiffs' property is for a public purpose, as the taking is one the Governor has justified as protecting Michigan's public health, safety, and welfare.

101.    Governor Whitmer has placed the cost of her Orders benefitting the public on the shoulders of private businesses and has failed to offer appropriate compensation for these takings.

102.    The Governor's Executive Orders jeopardize the sustainability of Plaintiff businesses and Plaintiffs' rights to property ownership.

103.    The U.S. and Michigan Takings Clauses do not prohibit the government's authority to interfere with private property, but they do require the government to pay adequate compensation for a taking.

104.    The Takings Clauses apply to personal as well as real property.

105.    The Takings Clauses apply to permanent as well as temporary interference with private use of property.

106.    As a result of the Governor's Executive Orders, Plaintiffs, and those similarly situated, have at least temporarily lost all economically beneficial use of their real and personal property.

107.    Alternatively, the Governor's Executive Orders constitute a taking based on "the magnitude of the Orders' economic impact and the degree to which the Orders interfere with

legitimate property interests. Either way, the Executive Orders effect an unconstitutional taking without just compensation.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court:

a.        Grant immediately an emergency, preliminary injunction that authorizes Plaintiffs to provide services in accord with appropriate social distancing;

c.        After the claims are fully adjudicated, declare the above-referenced provisions of Executive Order 2020-42 (and any such provisions in new Executive Orders or extensions of Executive Order 2020-42) unconstitutional as applied and permanently enjoin their enforcement against Plaintiffs and members of Classes 1 through 3;

d.        After the claims are fully adjudicated, declare the above-referenced provisions of Executive Orders 2020-21 and 2020-42 (and any such provisions in new Executive Orders or extensions of Executive Orders 2020-21 and 2020-42) as an unconstitutional taking under the U.S. and Michigan Constitutions and award Plaintiffs and members of Class 4 appropriate compensation;

e.        Enter an award of ascertainable money damages in amount to be determined at trial;

f.        Pursuant to 42 U.S.C. § 1988, enter an award of reasonable attorney fees and costs in favor of Plaintiffs; and

g.        Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: April 16, 2020

By:  /s/ John J. Bursch
    John J. Bursch
    BURSCH LAW, PLLC
    9339 Cherry Valley Ave. SE, #78
    Caledonia, Michigan 49316
    (616) 450-4235
    jbursch@burschlaw.com

    *Counsel for Plaintiffs*

## VERIFICATION

I, Amy Upton, declare as follows:

1.    I am an adult competent to testify to the matters stated herein.

2.    I am the Executive Director of the Michigan Nursery and Landscape Association ("MNLA"), and in that capacity, I am familiar with the business of MNLA, a Plaintiff in this action.

3.    I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief, and, based upon my personal knowledge of the facts stated therein, the facts stated in the Verified Complaint are true to the best of my knowledge and belief.

4.    If called upon to testify, I would competently testify as to the matters stated herein.

5.    Due to the restrictions on personal travel in Governor Whitmer's Executive Order 2020-42, I am unable to meet in person with a notary to verify this Complaint.

6.    Accordingly, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_Amy Upton_ , Executive Director

Date: _4/17/2020_

## VERIFICATION

I, Chris-Ann Paterson Welton, declare as follows:

1.      I am an adult competent to testify to the matters stated herein.

2.      I am a co-owner of Welton Maintenance, LLC d/b/a Welton Lawn Care ("Welton Lawn Care"), and in that capacity, I am familiar with the business of Welton Lawn Care, a Plaintiff in this action.

3.      I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief, and, based upon my personal knowledge of the facts stated therein, the facts stated in the Verified Complaint are true to the best of my knowledge and belief.

4.      If called upon to testify, I would competently testify as to the matters stated herein.

5.      Due to the restrictions on personal travel in Governor Whitmer's Executive Order 2020-42, I am unable to meet in person with a notary to verify this Complaint.

6.      Accordingly, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_Chris-Ann Paterson Welton_

Date: _4/16/2020_

27

## VERIFICATION

I, John Moehn, declare as follows:

1.　　I am an adult competent to testify to the matters stated herein.

2.　　I am a member of ExperiGreen – Detroit, LLC d/b/a ExperiGreen Lawn Care ("ExperiGreen"), and in that capacity, I am familiar with the business of ExperiGreen, a Plaintiff in this action.

3.　　I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief, and, based upon my personal knowledge of the facts stated therein, the facts stated in the Verified Complaint are true to the best of my knowledge and belief.

4.　　If called upon to testify, I would competently testify as to the matters stated herein.

5.　　Accordingly, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: 4/17/2020

28

## VERIFICATION

I, _Raymond J. Wiegand, Jr._, declare as follows:

1.     I am an adult competent to testify to the matters stated herein.

2.     I am the _President_ of Ray Wiegand's Nursery, Inc., and in that capacity, I am familiar with the business of Ray Wiegand's Nursery, Inc., a Plaintiff in this action.

3.     I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief, and, based upon my personal knowledge of the facts stated therein, the facts stated in the Verified Complaint are true to the best of my knowledge and belief.

4.     If called upon to testify, I would competently testify as to the matters stated herein.

5.     Due to the restrictions on personal travel in Governor Whitmer's Executive Order 2020-42, I am unable to meet in person with a notary to verify this Complaint.

6.     Accordingly, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: _4-17-2020_

## **VERIFICATION**

I, _Aaron Samson_ declare as follows:

1.     I am an adult competent to testify to the matters stated herein.

2.     I am the _president_ of AGS Holdings, Inc. d/b/a Lush Lawn ("Lush Lawn"), and in that capacity, I am familiar with the business of Lush Lawn, a Plaintiff in this action.

3.     I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief, and, based upon my personal knowledge of the facts stated therein, the facts stated in the Verified Complaint are true to the best of my knowledge and belief.

4.     If called upon to testify, I would competently testify as to the matters stated herein.

5.     Due to the restrictions on personal travel in Governor Whitmer's Executive Order 2020-42, I am unable to meet in person with a notary to verify this Complaint.

6.     Accordingly, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.



Date: _4 - 17 - 20_

## VERIFICATION

I, Jennifer Tarrence, declare as follows:

1.      I am an adult competent to testify to the matters stated herein.

2.      I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief, and, based upon my personal knowledge of the facts stated therein, the facts stated in the Verified Complaint are true to the best of my knowledge and belief.

3.      If called upon to testify, I would competently testify as to the matters stated herein.

4.      Due to the restrictions on personal travel in Governor Whitmer's Executive Order 2020-42, I am unable to meet in person with a notary to verify this Complaint.

5.      Accordingly, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: 4·17·20

## VERIFICATION

I, *Charles Bruton*_____, declare as follows:

1. I am an adult competent to testify to the matters stated herein.

2. I am the ____*Owner*_____ of Bruton's Lawn Care, LLC, and in that capacity, I am familiar with the business of Bruton's Lawn Care, LLC, a Plaintiff in this action.

3. I have read the foregoing Verified Complaint for Declaratory and Injunctive Relief, and, based upon my personal knowledge of the facts stated therein, the facts stated in the Verified Complaint are true to the best of my knowledge and belief.

4. If called upon to testify, I would competently testify as to the matters stated herein.

5. Due to the restrictions on personal travel in Governor Whitmer's Executive Order 2020-42, I am unable to meet in person with a notary to verify this Complaint.

6. Accordingly, pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

_Charles Bruton_____

Date: _4-17-20_____